Rodab **SHERVIN, Plaintiff/Respondent,**

v.

**HUNTLEIGH SECURITIES CORP., Defendant/Appellant.**

**No. ED 80271.**

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 17, 2002.

of $545,084.00 based on her petition for breach of fiduciary duty and negligence. We affirm.

## Factual and Procedural Background

On November 27, 1996, Wife's marriage to Dr. Adel Shervin (Husband) was terminated by a Judgment of Dissolution. On March 3, 1997, the trial court entered an amended Judgment that awarded Wife "100% of Respondent's (Husband's) pension benefits accrued from the date of the marriage to the date of the entry of the Judgment/Decree in this cause, in Retirement Plan # 2 with Huntleigh Securities Acct. # 74–059585." After entry of the amended Judgment, Wife sent a copy of the amended Judgment to Appellant's Chief Financial Officer Thomas Davidson (Davidson), and the trial court signed a Qualified Domestic Relations Order (QDRO), prepared by Wife, which assigned 100% of Husband's benefits to Wife. Davidson testified that upon receiving the amended Judgment, he froze the account to prevent Husband from taking money from the account.

On July 23, 1997, Wife was notified that Husband, in his capacity as administrator for Retirement Plan # 2, attempted to liquidate the plan, even though it had been wholly awarded to Wife by the amended Judgment. On July 25 and October 1, 1997, Wife obtained restraining orders preventing Husband from removing, transferring, withdrawing from or liquidating the plan. Wife sent copies of these orders to Appellant.

On December 30, 1999, Appellant received written instructions from Husband, as administrator and trustee of Retirement Plan # 2, to transfer the assets contained therein to Mercantile Bank. Appellant consulted with its legal counsel, Terry Lister (Lister), as to whether there was a legal

Thomas J. Magee, Robyn Fox, Moser, Marsalek, & P.C, St. Louis, MO, for Respondent.

Edward Meyer, Rabbitt, Pitzer & Snodgrass, St. Louis, MO, for Appellant.

SHERRI B. SULLIVAN, Judge.

## Introduction

Huntleigh Securities Corp. (Appellant) appeals from the Amended Judgment of the trial court in favor of Rodab Shervin (Wife) and against Appellant in the amount

basis for stopping transfer of the funds. Lister advised Appellant that there was no legal basis for stopping transfer of the funds.

On January 11, 2000, Cathy Marshall (Marshall), a representative of Appellant, informed Wife that Husband had submitted the transfer request. Wife delivered a letter to Appellant reminding Appellant that it possessed certified copies of the court orders awarding Retirement Plan # 2 to Wife and requesting that Wife be notified if Appellant intended to honor the request to transfer the funds.

On January 14, 2000, Appellant transferred the assets in Retirement Plan # 2 by check to Mercantile Bank. After the transfer, Mercantile Bank wired the funds to Harris International Bank to be deposited in Husband's bank account with Lloyd's of London in the United Kingdom. After the assets were transferred overseas, Wife was unable to capture the funds through judicial restraining orders. Husband ultimately took the funds for his own personal use.

Wife filed suit against Appellant alleging that Appellant breached a fiduciary duty and a duty of ordinary care to her when it transferred the funds contained in Retirement Plan # 2 to Mercantile Bank in January 2000. After a bench trial, the trial court entered judgment, and ultimately an Amended Judgment, in favor of Wife in the amount of $545,084.00. This appeal follows. Appellant presents six points on appeal.

### Standard of Review

The appellate court will sustain the decree or judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). The trial court's judgment will be set aside only with a firm belief that the judgment is wrong. *Id.* In reviewing the evidence, we view the evidence, along with all reasonable inferences, in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences. *McRentals, Inc. v. Barber*, 62 S.W.3d 684, 696 (Mo.App. W.D.2001). As the trier of fact, the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony. *Id.*

### Point I

In its first point, Appellant maintains that the trial court erred in finding that Appellant had a fiduciary duty to Wife because the evidence at trial was insufficient to establish the existence of a special relationship necessary for the imposition of a fiduciary duty in that there was no evidence of a voluntary act by Appellant which reasonably encouraged Wife to repose trust in it. Appellant also contends that it was not a party to the prior civil proceedings between Wife and Husband.

### Discussion

When breach of fiduciary duty is asserted as a tort claim, the proponent must establish that a fiduciary duty existed between it and the defending party, that the defending party breached the duty, and that the breach caused the proponent to suffer harm. *Zakibe v. Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 381 (Mo.App. E.D.2000).

A fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g., attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that

the latter gains superiority and influence over the former. *A.G. Edwards & Sons, Inc. v. Drew,* 978 S.W.2d 386, 394 (Mo. App. E.D.1998). The question in determining whether a fiduciary or confidential relationship exists is whether or not trust is reposed with respect to property or business affairs of the other. *Schimmer v. H.W. Freeman Const. Co., Inc.,* 607 S.W.2d 767, 770 (Mo.App. E.D.1980).

Wife cites *In re Marriage of Gardner,* 973 S.W.2d 116, 124 (Mo.App. S.D.1998), for the proposition that a plan administrator's obligation to an alternate payee arises when a plan receives a domestic relations order. In this case Husband is the plan administrator, not Appellant. Accordingly, *Gardner* does not support the existence of a fiduciary duty to Wife on the part of Appellant not to transfer the funds at Husband's request.

Walter Robinson (Robinson), Wife's expert, testified that upon receipt of the court order, Appellant should have changed the name of the account to Wife. However, Robinson's opinion testimony does not establish the existence of a fiduciary duty as a matter of law. *See Drew,* 978 S.W.2d at 394 (A fiduciary relationship may arise as a matter of law by virtue of the parties' relationship).

Wife cites *Arnold v. Erkmann,* 934 S.W.2d 621, 629 (Mo.App. E.D.1996), for the proposition that one of the key elements of a fiduciary relationship is the fiduciary's control of the supervised party's property. Wife asserts that Appellant had control over *her property,* since the court orders established her ownership of the funds in Retirement Plan # 2. We agree. Wife sent copies of the court orders to Appellant that said that she was given the entire interest of the funds in the account. These actions gave Appellant notice that Wife had been awarded ownership of the funds in the account.

Wife further argues that Appellant, by its own assurances to Wife that the money would not be transferred, had a duty not to transfer the funds at the sole request of Husband, who no longer had a legal right to, or interest in, those funds. Here we disagree, for the following reasons.

■ A confidential relationship exists when one person relies upon and trusts the other with the management of his property and attendance to his business affairs, thereby creating *some degree* of fiduciary obligation. *Erkmann,* 934 S.W.2d at 629. However, we do not believe Appellant's duty to Wife in this case was to refuse to transfer the money upon Husband's request. Rather, we find that Appellant had a limited duty to inform Wife when it intended to transfer the funds in the account.

■ In looking for a fiduciary relationship, equity does not limit the circumstances under which it may be found, but will look for those instances where a special confidence is reposed on one side with a resulting influence on the other. *Robertson v. Robertson,* 15 S.W.3d 407, 412 (Mo. App. S.D.2000). The question is always whether or not trust is reposed with respect to property or business affairs of the other. *Id.* In the instant case, Appellant made a representation to Wife that it would not transfer the funds in the account. Therefore, Wife reposed trust in Appellant that Appellant would not transfer the funds in the account, funds that she owned. Once Appellant determined that it was going to honor Husband's request to transfer the funds, Appellant had a duty to inform Wife of its intention to comply with that request.

Based on the foregoing, we find that Appellant had a limited fiduciary duty to Wife to inform her of its intent to transfer the funds in Retirement Plan # 2 pursuant

to Husband's request. Appellant did not have a fiduciary duty to Wife to refuse Husband's request to transfer the funds in Retirement Plan # 2. Therefore, we disagree with the trial court's finding that Appellant breached its fiduciary duty to Wife by transferring the funds, but we do find Appellant breached its fiduciary duty to Wife to inform her when it intended to transfer the funds. If Appellant had done so, Wife could have taken the appropriate action, such as obtaining a temporary restraining order, to prevent such transfer. Because the amount of damages Wife incurred is the same regardless of how we characterize Appellant's fiduciary duty, we find no reason to reverse the trial court's judgment.

Accordingly, Appellant's Point I is denied.

### Point II

In its second point, Appellant claims the trial court erred in finding that the transfer of the money contained in Retirement Plan # 2 to Mercantile Bank was a breach of fiduciary duty because the evidence demonstrated that Appellant performed all fiduciary duties in that Appellant notified Wife's attorney of the transfer request prior to the transfer of the funds, and any further action would have constituted a breach of a concurrent duty to Husband.

### Discussion

As previously discussed, we find that Appellant had a fiduciary duty to inform Wife of its intent to honor Husband's request to transfer the funds in Retirement Plan # 2, which it did not do. Appellant breached that fiduciary duty to Wife, and Wife incurred the same amount of damages from this breach as the one found by the trial court. Therefore, we find no reason to reverse the trial court's judgment. Appellant's Point II is denied.

### Point III

In its third point, Appellant asserts that the trial court erred in finding that Appellant owed a duty of ordinary care to Wife because the evidence established that no such duty existed, in that no such duty on the part of a broker has ever been previously recognized under Missouri case law. Appellant maintains that Appellant had no duty of ordinary care by virtue of the court orders in the prior civil proceedings between Wife and Husband, and the foreseeability of injury to Wife was substantially outweighed by the adverse consequences of placing the burden of preventing the transfer of the retirement finds on Appellant.

### Discussion

As we have already determined, *Gardner* does not support a duty of ordinary care from Appellant to Wife. Further, we have already established the extent of Appellant's fiduciary duty to Wife based on her trust and repose in Appellant to manage funds that Appellant had notice and knowledge were hers. For the same reasons enunciated in our discussion of Appellant's first and second points on appeal, we find that Appellant's duty of care to Wife was to inform her of its intent to honor Husband's request to transfer the funds. Whether this duty is characterized as fiduciary or one of ordinary care, it extends only to advising Wife of Appellant's intent to transfer the funds. Appellant breached this duty and therefore we need not find whether or not Appellant also breached a duty of ordinary care based on the same actions. Such a finding would be redundant because the damages are the same. Accordingly, Appellant's Point III is denied.

### Point IV

In its fourth point, Appellant claims that the trial court erred in finding that the

breach of a duty owed by Appellant proximately caused Wife's damages because the evidence established the lack of proximate cause in that Wife's attorney knew of the transfer request prior to the transfer but failed to take any timely action to prevent the transfer, and it was Husband's action in later transferring the funds from a Mercantile account to a foreign account that caused Wife's damages.

### Discussion

■■■ The practical test of proximate cause is whether the negligence is "an efficient cause which sets in motion the chain of circumstances leading to the plaintiff's injuries or damages." *Simonian v. Gevers Heating & Air Conditioning, Inc.*, 957 S.W.2d 472, 475 (Mo.App. E.D. 1997). The test is not whether a reasonably prudent person would have foreseen the particular injury, but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant. *Id.* The defendant's negligence need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have occurred. *Id.*

■■ If two or more persons are guilty of consecutive acts of negligence, closely related in time, there is a question as to whether one initial act of negligence was a proximate cause of the injury or whether there was an efficient, intervening cause. *Id.*

■■■ An intervening cause is a new and independent force that so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury, but it may not consist of an act of concurring or contributory negligence. *Id.* Finally, the determination of substantiality and proximity of the causal relationship between negligence

and injury is dependent upon the particular facts of each case, and it is seldom that one decision controls another. *Id.*

■■ We found that Appellant's duty in this case was to inform Wife that it was going to honor Husband's request to transfer the funds, before it actually transferred the funds. Appellant did not inform Wife's attorney that it was going to transfer the funds, when it actually did transfer the funds. Because Wife's attorney was never informed and therefore had no knowledge that the transfer was going to take place, she did not have a duty to take any action and therefore there was no "failure to take any action to prevent the transfer." Appellant's failure to inform Wife of its intent to transfer the funds directly caused Wife's damages because it precluded any attempt by Wife's attorney to stop the transfer. Appellant's lack of proximate cause argument is without merit.

Accordingly, Appellant's Point IV is denied.

### Point V

In its fifth point, Appellant argues that the trial court erred in finding that the value of Husband's interest in Retirement Plan # 2 on the date of dissolution was $472,000.00 because the evidence established that the value of Husband's interest was no more than $147,415.00, in that Appellant's expert testified that the value of Husband's interest at the time of dissolution was $147,415.00, and Wife is collaterally estopped from re-litigating the issue of the valuation of Husband's interest in Retirement Plan # 2 based upon the disposition of Husband's appeal in *Shervin v. Shervin*, 969 S.W.2d 350 (Mo.App. E.D. 1998).

### Discussion

The trial court found that Wife was entitled to Husband's entire interest in Retire-

ment Plan # 2. We find that substantial evidence in the record supported the trial court's finding that the value of Husband's interest in Retirement Plan # 2 was $487,653.58. At the time Appellant transferred the account to Mercantile, Husband's interest in the Account was $487,653.58. When Husband withdrew his interest in the Account, he withdrew $487,653.58.[1] These facts are not in dispute.

 Appellant claims that regardless of the amount transferred, Wife is estopped by her counsel's statement in Wife's brief in the dissolution proceeding that the value of Husband's interest in the account was $147,415.00. However, admissions arising from a separate proceeding are not "judicial admissions" in the sense of their being binding concessions of truth of some material fact. *Silver Dollar City, Inc. v. Kitsmiller Const. Co., Inc.*, 931 S.W.2d 909, 917 (Mo.App. S.D.1996). They do, however, constitute admissions that the trier of fact could properly consider. *Id.*

Appellant argues that the trial court specifically found in the dissolution proceeding that the value of Husband's interest in Retirement Plan # 2 was $147,415.00. On the contrary, the final amended judgment in the dissolution proceeding entered by the trial court on March 3, 1997, found that Wife was entitled to 100% of Husband's interest in Retirement Plan # 2, without mentioning any valuation of the plan. This fact is noted on page 14 of the transcript in the record on appeal as well. In Wife's cause of action against Appellant, the trial court attributed a value of $472,000.00 to Husband's interest in Retirement Plan # 2, which was awarded in its entirety to Wife by virtue of the dissolution proceeding and QDRO. Ac-

cordingly, Appellant's argument is without merit.

For the foregoing reasons, Appellant's Point V is denied.

## Point VI

In its sixth point, Appellant claims that the trial court erred in not assessing a percentage of fault to Wife on her negligence claim because the evidence at trial established comparative fault as a matter of law, in that Wife's attorney knew of the transfer request prior to transfer of the funds in Retirement Plan # 2, and was aware that the funds would be transferred in the absence of a temporary restraining order (TRO), yet failed to take timely action to prevent the transfer.

## Discussion

Appellant's assertion that "the undisputed evidence at trial showed that Wife, through her divorce attorney, knew of the impending transfer of the funds, and yet failed to take any timely action to prevent the transfer" is wholly without merit. As we determined in our discussion and resolution of Points I and II, Appellant breached its fiduciary duty to inform Wife that it was going to honor Husband's request and transfer the funds. Appellant only informed Wife that Husband had made a request that the funds be transferred. Appellant cannot sustain its contention that the undisputed evidence showed Wife knew Appellant was going to transfer the funds.

For these reasons, Appellant's Point VI is denied.

---

1. The trial court found Wife's interest of the $487,653.58 to be $472,000.00. No one disputes this valuation. Appellant only maintains that Wife is estopped from arguing she is entitled to anything other than $147,415.00.

*Conclusion*

The judgment of the trial court is affirmed.

WILLIAM H. CRANDALL, JR., P.J., and GLENN A. NORTON, J., concur.